# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

IN RE FRANCISCO JAVIER JAYME,
and ALICIA ROJAS JAYME,

              Debtors,

                                                    No. 1:18-cv-00675-JCH-KRS

FRANCISCO JAVIER JAYME,
and ALICIA ROJAS JAYME,

              Appellants,

v.

JOE JESSE MONGE, and
ROSANA ELENA MONGE,

              Appellees.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

Francisco Jayme and Alicia Rojas[1] appeal the United States Bankruptcy Court for District of New Mexico's judgment denying them a discharge under 11 U.S.C. §§ 727(a)(2)(A) and (4)(A). Following a bench trial on creditors Joe and Rosana Monges' adversary complaint, the Bankruptcy Court issued findings of fact and conclusions of law determining that Jayme and Rojas made false oaths in their petition, schedules, statement of financial affairs ("SOFA") and offered false testimony at trial, all in connection with material facts and fraudulent intent. *See Monge v. Jayme (In re Jayme)*, 2018 Bankr. LEXIS 1987, at *2 (Bankr. D.N.M. June 29, 2018).[2] Pursuant to an order of reference from United States District Judge Judith C. Herrera, *see* 28 U.S.C. § 636(b)(1)(B) & (b)(3), the Court has considered Jayme and Rojas' briefing[3] and the

---

[1] As explained below, one issue is Appellant Alicia Rojas Jayme's correct name. Because the Bankruptcy Court determined that she was most comfortable with the surname "Rojas," the Court uses this iteration. *See id.*, at *11.

[2] For ease of reference, the Court uses the case citation, instead of the record citation. The Bankruptcy Court decision is located in the record on appeal at Document Number 11 from pages at 409 to 434.

[3] The Monges did not file a response brief as allowed under the scheduling order. Despite the absence of a response brief, the Court must still address the merits of the appeal.

record on appeal as designated.  Having done so, the Court **RECOMMENDS** that the Bankruptcy Court be **AFFIRMED** and this matter **DISMISSED with prejudice**.

## I.   FACTS

This case's background spans nearly two decades and includes multiple bankruptcy filings in two federal districts along with an appeal to the United States Court of Appeals for the Fifth Circuit. *See Monge v. Rojas (In re Monge),* 826 F.3d 250 (5th Cir. 2016).  It is not necessary or practical to a disposition to recount that entire history.  What follows comes largely from the Bankruptcy Court's findings in this sixth bankruptcy case.

Jayme and Rojas are married.  *In re Jayme*, 2018 Bankr. LEXIS 1987, at *3.  Jayme is a real-estate agent; he also served on Sunland Park's city council.  *Id.* at Exh. A.  Rojas is a mortgage loan broker and, among other things, a caregiver, housewife, and a property manager that never managed properties.  *Id.*  In 2002, Jayme and Rojas borrowed money to buy a house in Santa Teresa, New Mexico located at 105 Thoroughbred Court ("105 Thoroughbred Court").  *Id.* at *2.  They soon defaulted on the loan.  *Id.*  For more than a decade, however, Jayme and Rojas continued to reside in the home.  *Id.* at 27.

In 2003, Jayme petitioned for Chapter 13 protection in United States Bankruptcy Court for the Western District of Texas.  *Id.* at *3.  Although the court confirmed a plan, Jayme stopped making the required payments.  *Id.*  The bankruptcy court dismissed the mater in July 2004.  *Id.*  The bank subsequently commenced foreclosure proceedings on 105 Thoroughbred Court in state court.  *Id.*  Following a default judgment, the state court ordered the sale of property.  *Id.*  The sale did not go forward as planned; Jayme filed again for Chapter 13 protection but this time in the Bankruptcy Court for the District of New Mexico.  *Id.*  On January 19, 2005, that case was dismissed.  Jayme did not file the necessary schedules or statements to prosecute his case.  *Id.*  A few weeks later, Jayme filed a third Chapter 13 case.  He did not confirm a plan and voluntarily

dismissed the matter on July 26, 2005. *Id.* Meanwhile, the state court rescheduled the sale of 105 Thoroughbred Court for November 1, 2005. *Id.* Although Jayme filed a fourth bankruptcy petition on that date, the case was dismissed and did not stop the sale. *Id.* at *5. Shortly thereafter, a special master sold the property. *Id.* The resulting deed provided for a one-month, statutory redemption period. *See In re Monge*, 826 F.3d at 253.

As the foreclosure unfolded, Jayme and Rojas became acquainted with the Monges and began discussing selling 105 Thoroughbred Court to them for $775,000. *Id.* Interested in going into business, the Monges borrowed $697,000 pursuant to a loan that Rojas brokered, and executed a sale/lease-back agreement. *In re Jayme*, 2018 Bankr. LEXIS 1987, at *4. Under the arrangement, the Monges would own 105 Thoroughbred Court, but Jayme and Rojas would pay rent to live there directly to the Monges' mortgage holder and take the equity they accumulated from the sale and use it in various business endeavors with the Monges. *In re Monge*, 826 F.3d at 253. Jayme and Rojas did not inform the Monges or the Monges' lender about the foreclosure or bankruptcy cases. *In re Jayme*, 2018 Bankr. LEXIS 1987, at *4. Once the 105 Thoroughbred Court sale was complete, Jayme and Rojas redeemed the property for $567,440 and recorded a new deed to the Monges, rectifying any cloud on title. *Id.*

Jayme and Rojas did not honor the lease agreement and largely lived at 105 Thoroughbred Court rent free. *Id.* at *27. Because the Monges relied on Jayme and Rojas to make payments to the Monges' bank directly, the Monges' mortgage became delinquent. *Id.* at *6. In 2009, the Monges petitioned for bankruptcy protection in the Western District of Texas and filed an adversary complaint against Jayme and Rojas related to sale/lease-back agreement. *Id.* Following a trial in 2014, the Monges won a money judgement against Jayme and Rojas for $997,354. *Id.* at *6-7. The Fifth Circuit ultimately affirmed the judgement. *See In re Monge*, 826 F.3d 250.

Jayme and Rojas filed the instant Chapter 7 case on March 3, 2015 and were ultimately evicted from 105 Thoroughbred Court in June of 2015. *In re Jayme*, 2018 Bankr. LEXIS 1987, at *5. By way of an adversary complaint in this case, the Monges asked the Bankruptcy Court to deny Jayme and Rojas' a discharge from the debts owed to them. After a bench trial held on January 16, 2018, the Bankruptcy Court issued written findings agreeing with Monges and denying Jayme and Rojas a discharge under 11 U.S.C. § 727(a)(4) and (a)(2)(a). (Docs. 11; 26). The Bankruptcy Court concluded Jayme and Rojas "made false oaths in their bankruptcy petition, schedules, and SOFA, and gave false trial testimony, all about material facts and with the requisite fraudulent intent"; and "at least one material asset was fraudulently concealed." *In re Jayme*, 2018 Bankr. LEXIS 1987, at *30. Final judgement was entered on June 29, 2018. (Doc. 11, at 405-406). Jayme and Rojas timely appealed.

## II.    STANDARD OF REVIEW

The decision to deny a debtor a discharge in Chapter 7 proceedings rests within the sound discretion of the Bankruptcy Court. *See United States Tr. v. Garland (In re Garland),* 417 B.R. 805, 810 (10th Cir. BAP 2009). This Court therefore reviews the Bankruptcy Court's denial of a discharge for abuse of discretion. *See id.* "A court abuses its discretion where it commits a legal error or relies on clearly erroneous factual findings, or where there is no rational basis in the evidence for its ruling." *Gillman v. Ford (In re Ford),* 492 F.3d 1148, 1153 (10th Cir. 2007) (brackets and internal quotation marks omitted). The Court "must defer to [the Bankruptcy Court's] findings unless they are without factual support in the record, or, after examining all the evidence, [the Court is] left with a definite and firm conviction that a mistake has been made." *Diamond v. Vickery (In re Vickery)*, 488 B.R. 680, 685 (B.A.P. 10th Cir. 2013).

## III.    DISCUSSION

On appeal, Jayme and Rojas challenge (1) the Bankruptcy Court's partiality; (2) the Monges' standing to file the adversary proceeding; and (3) the Bankruptcy Court's factual findings and legal conclusions.  None of these challenges provides a basis to reverse the Bankruptcy Court.[4]

### A.  **Partiality**

Jayme and Rojas argue that the Bankruptcy Judge's bias requires reversal.  They point to the judge's (1) findings suggesting Jayme and Rojas may have never made a mortgage payment on the 105 Thoroughbred Court property; (2) reliance on, and questions about, their past five bankruptcies; (3) creation of a spreadsheet comparing assets, income, and other information across their multiple bankruptcies; (4) alleged selective adoption of findings from the Texas bankruptcy proceedings; (5) alleged defamation, false criminal accusations, and fabrication of evidence; (7) alleged overturning of the Texas proceedings on "after-acquired evidence"; (8) comments that Jayme and Rojas were attempting to undue the Monges' "victory" in Texas; and (9) alleged personal attacks against Jayme and Rojas, not affording them an opportunity to respond, and otherwise not acting in a civil and orderly manner.  Jayme and Rojas have waived all but the eighth point.

Arguments raised for the first time on appeal are not preserved for review. *See In re Williams*, 49 Fed. Appx. 845 (10th Cir. 2002) (explaining that a reviewing court will not consider arguments not passed upon below).  This waiver rule applies to bankruptcy appeals in the district court. *See Merrill v. Abbott (In re Indep. Clearing House Co.)*, 77 B.R. 843, 877 (D.

---

[4] The Court has done its best to wade through Jayme and Rojas' lengthy brief and attempt to discern the true issues at play.  This task was complicated by unnecessary hyperbole, undeserved accusations, unwarranted vitriol, and failure to designate and submit the entire trial transcript. (Doc.26). *See Gefreh v. Schupper (In re Monument Gun Shop, Inc.)*, 2000 U.S. App. LEXIS 19472, at *3 n.1 (10th Cir. Aug. 11, 2000)("It is appellant's burden to designate a proper record on appeal from which this court can review and decide the alleged points of error").

Utah 1987) (applying the "well settled law" that "issues not presented to the trial court need not be considered on appeal"). In the context of judicial bias, a party must typically object at or move to recuse during trial. *United States v. Nickl*, 427 F.3d 1286, 1297-98 (10th Cir. 2005) (explaining that "a party alleging judicial bias should move for recusal, and must do so in a timely fashion" which typically means "fil[ing] a pleading, object[ing], or mov[ing] for recusal during trial).

Here, Jayme and Rojas challenged the Bankruptcy Court's bias in a motion to recuse in advance of trial, which the Bankruptcy Court denied. (Doc. 7, at 530-37). But the only concrete citation by Jayme and Rojas to alleged impartiality was this statement from the Bankruptcy Judge during a June 3, 2015 pretrial conference: "I guess my sense of this was that plaintiffs won everything in Texas and the debtors filed bankruptcy in New Mexico to avoid the consequences of your victory." (*Id.*). Thus, the myriad of other bases Jayme and Rojas raise in this Court were not presented to the Bankruptcy Court in the first instance and are waived. As for the preserved assignment of bias and Jayme and Rojas' contention that Bankruptcy Judge's comment "demonstrates a willful contempt for the Debtors," the Court disagrees that the Judge acted impartially.

The Due Process Clause "entitles a litigant to an impartial and disinterested tribunal in both civil and criminal cases." *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242, (1980). "Ordinarily, when a judge's words or actions are motivated by events originating within the context of judicial proceedings, they are insulated from charges of bias." *United States v. Nickl*, 427 F.3d 1286, 1298 (10th Cir. 2005). "[A]dverse rulings [therefore] cannot in themselves form the appropriate grounds for disqualification." *Green v. Branson*, 108 F.3d 1296, 1305 (10th Cir. 1997) (internal quotation marks omitted). Nor can ordinary efforts at courtroom administration require recusal. *See Liteky v. United States*, 510 U.S. 540, 555-56 (1994). The standard for

assessing bias is objective, and "the inquiry is limited to outward manifestations and reasonable inferences drawn therefrom." *United States v. Cooley*, 1 F.3d 985, 993 (10th Cir. 1993).

Setting aside timing—the conference occurred in 2015 and the trial was held in 2018—the Bankruptcy Court accurately represented the posture of the case. Filing bankruptcy necessarily involves an attempt to avoid the consequence of debt. *See Wetmore v. Markoe*, 196 U.S. 68, 77 (1904) ("Systems of bankruptcy are designed to relieve the honest debtor from the weight of indebtedness which has become oppressive, and to permit him to have a fresh start[.]") The Monges won, at least in part, their adversary proceeding in Texas, which resulted in a judgment against Jayme and Rojas. This subsequent Chapter 7 case amounts to a legally recognized effort to avoid paying that debt. Although Jayme and Rojas ascribe a sinister motive to the Bankruptcy Court's statements, objectively, nothing approaching bias is present in the accurate characterization of the circumstances—a victory and a legally recognized way to undo that victory.[5] In short, Jayme and Rojas' allegation of bias does not require reversal.

### B. <u>Standing</u>

The Constitution limits jurisdiction to "cases and controversies" U.S. Const. Art. III. "Those two words confine the business of federal courts to questions presented in an adversary context and in a form historically viewed as capable of resolution through the judicial process." *Massachusetts v. EPA*, 549 U.S. 497, 516 (2007) (internal quotation marks omitted). Standing asks whether the plaintiff has "such a personal stake in the outcome of the controversy as to assure that concrete adverseness [will] sharpen[] the presentation of issues upon which the court so largely depends for illumination." *First Am. Title Ins. Co. v. Nw. Title Ins. Agency*, 906 F.3d

---

[5] In any event, the Bankruptcy Judge's comment lacked the extrajudicial predicate to require disqualification. *See Nickl*, 427 F.3d at 1298 (explaining that "when a judge's words or actions are motivated by events originating within the context of judicial proceedings, they are insulated from charges of bias").

884, 890 (10th Cir. 2018) (citation omitted). Three elements frame the inquiry: the existence of "(1) an injury in fact that is (2) traceable to the defendant and is (3) redressable by the court. *Id.* Jayme and Rojas challenge the Monges' standing to object to discharge. The Court rejects this argument.

The Monges purchased 105 Thoroughbred Court and then leased it to Jayme and Rojas pursuant to a written agreement. Jayme and Rojas failed to pay rent directly to Monges' mortgagee as the contract required. As a result, the Monges defaulted on their obligation to their mortgagee. Through the adversary proceeding in Texas, the Monges obtained a judgement against Jayme and Rojas for back rent and attorney's fees. When Jayme and Rojas sought to discharge the amounts owed to the Monges by filing this Chapter 7 case, the Monges initiated the instant adversary proceeding objecting to discharge. Standing is, therefore, present. Discharge of the Monges' judgment represents the injury, which would not occur but for the instant Chapter 7 case and which is redressable thorough the adversary proceeding the Monges initiated.

Jayme and Rojas' contention that the judgment belongs to the trustee in the Monges' bankruptcy case for payment to the Monges' lender conflates standing with a real-party-in-interest challenge. *See First Am. Title Ins. Co.*, 906 F.3d at 889. "Frequently, attorneys and courts confuse the concepts of standing with that of capacity to sue and with the real party in interest principle." *Norris v. Causey*, 869 F.3d 360, 366 (5th Cir. 2017) (citation omitted") A "key jurisdictional distinction" exists between the two types of challenges. *Id.* A real-party challenge "presents a merits question" of "who, according to the governing substantive law, is entitled to enforce the right[.]" *Id.* (citations omitted). Unlike standing, which implicates jurisdiction, an argument about whether a claim belongs to the bankruptcy trustee must be raised before trial as an affirmative defense. *Id.* Although Jayme and Rojas moved to dismiss the

adversary complaint on standing grounds (Doc. 18, at 91-105), the Bankruptcy Court correctly concluded that 11 U.S.C. § 727(c) allows "a creditor . . . [to] object to the granting of a discharge…" (*Id.*). In fact, Jayme and Rojas named the Monges as creditors of a scheduled debt, the judgment. Jayme and Rojas point to no authority or any fact that as former debtors, the Monges could not meet the definition of "creditor" under the Bankruptcy Code.[6] In sum, the Bankruptcy Court properly exercised jurisdiction over this case, and the Monges are the real parties in interest.

### C. <u>Challenges to the Findings of Fact and Conclusions of Law</u>

The Bankruptcy Court concluded that Jayme and Rojas "made false oaths in their bankruptcy petition, schedules, an SOFA and gave false trial testimony, all about material facts, and with fraudulent intent" and, therefore were not entitled to a discharge under 11 U.S.C. § 727(a)(2)(a) and (a)(4). *In re* Jayme, 2018 Bankr. LEXIS 1987, at *29. Under Section 727(a)(4), discharge is not available if a creditor proves "the debtor knowingly and fraudulently made an oath and that the oath relates to a material fact." *Gullickson v. Brown (In re Brown),* 108 F.3d 1290, 1294 (10th Cir. 1997). An omission from a bankruptcy petition, schedule, or statement of financial affairs, which are signed under penalty of perjury, may constitute a false oath. *See In re Calder*, 907 F.2d 953, 955 (10th Cir. 1990). An oath is "material" if it bears a relationship to debtor's estate or concerns discovery of assets or existence of disposition of debtor's property. *See id.*

---

[6] Jayme and Rojas obviously believe the Monges fraudulently obtained the judgment in the Texas proceedings by not telling the bankruptcy and district court there of their obligation to pay their mortgage holder. Even if true, the Court cannot review this type of collateral challenge to the decision of another federal court. Jayme and Rojas' remedy was to appeal the decision of the Texas bankruptcy court. From the Fifth Circuit's decision, it is apparent no such argument was made, and Jayme and Rojas may not collaterally challenge a final ruling of a court of appeals upholding the Monge's money judgment in this Court.

To prevent discharge under Section 727(a)(2)(A), a creditor must prove (1) the debtor concealed (2) his or her property (3) within one year before filing bankruptcy, (4) intending "to hinder, delay, or defraud a creditor." *In re Gordon*, 526 B.R. 376, 388 (10th Cir. BAP 2015). The intent element of Sections 727(a)(4) and (a)(2)(A) are identical; intent to defraud may, and often must be "deduced from the facts and circumstances of a case." *In re Garland*, 417 B.R. at 810. "[R]eckless indifference to the truth" is "the functional equivalent of fraud[.]" *In re Butler*, 377 B.R. 895, 922 (Bankr. D. Utah 2006) (quoting *In re Tully*, 818 F.2d 106, 112 (1st Cir. 1987)). However, "mere mistake or inadvertence is not sufficient to bar a debtor's discharge under § 727." *In re Garland*, 417 B.R. at 815.

Here, the Bankruptcy Court's determination rested on five grounds: (1) Jayme and Rojas' use of names aliases; (2) the failure to disclose tax refunds; (3) Rojas' failure to disclose a past bankruptcy; (4) Jayme and Rojas' failure to disclose the possessory interest in 105 Thoroughbred Court; (5) Jayme and Rojas' false trial testimony; and (6) Jayme and Rojas's other omissions and misrepresentations in their sworn papers. As to each category, Jayme and Rojas mount challenges. The Court rejects each in turn.

### 1. *Names*

The Bankruptcy Court identified ten variations of names Jayme and Rojas used as well as eight associated business entities. *In re Jayme*, 2018 Bankr. LEXIS 1987, at *11. The Bankruptcy Court further explained:

> Ms. Rojas is not properly named. Neither of the disclosed names ("Alicia Jayme") and "Alicia Reyes de Jayme") is Ms. Rojas' legal name, which is "Alicia Rojas-Jayme" or "Alicia Rojas de Jayme." In addition, Ms. Rojas conducts business in El Paso, Texas under the name Alicia Rojas. This name should have been listed, but was not. At their § 341 meeting, the chapter 7 trustee pointed out to Defendants and their counsel that "Alicia Reyes de Jayme" was not Ms. Rojas' name. Defendant never bothered to amend their petition to list Ms. Rojas' real name. In addition, the trial testimony indicated that Mr. Jayme did business using the name Javier Rojas and/or Javier Jayme. Mr. Jayme should have added these names to his list of "All

> other names" in the petition. . . . . In addition, James Thomas testified that he had
> had known Mr. Jayme for years, and knew him only as Javier, never as Francisco.
> Mr. Thomas also testified that Mr. Jayme went by the name Javier Rojas

*Id.* at *11; 19.  Jayme and Rojas concede the use of different names and do not dispute that, as

far as Rojas is concerned, she knew of problems at the creditor's meeting.  Instead, they insist the

variations were innocent—nicknames or maiden names not designed to dupe creditors.

The Court disagrees with this contention.  Although innocence may be *an* interpretation

of the evidence, the Bankruptcy Court was free to read the same facts differently without this

Court subsequently second guessing the Bankruptcy Court. *See In re Vickery*, 488 B.R. at 685

(requiring dereference to the bankruptcy court's "findings unless they are without factual support

in the record).  Moreover, the Bankruptcy Court did not determine intent in a vacuum or by

relying on direct evidence.  As the law permits, the Bankruptcy Court drew on the totality of

misrepresentations as circumstantial evidence of intent and a pattern of inaccuracies to document

"reckless indifference to the truth."  *In re Garland*, 417 B.R. at 815 (circumstantial evidence is

usually necessary because a debtor "is unlikely to state that his intent was fraudulent.").

Nonetheless, Jayme and Rojas assert their social security numbers, the gold standard in

confirming identity, obviated the need to disclose aliases.  Admittedly, the main purpose for

disclosing aliases is to allow creditors to "discover assets and or business dealings."  *In re

Schmitz*, 224 B.R. 149, 151 (Bankr. D. Mont. 1998).  Obliviously, a social security number could

help in this regard.  But aside from a lack of legal support for this proposition, the assumption

that all assets and business dealings are attached to a social security numbers fails.  To begin a

search of assets or business dealings, an accurate name is needed. It is difficult to imagine

entering a social security number in a search engine and receiving a definitive list of holdings.

Thus, Jayme and Rojas' names and aliases were material to this case and their knowing failure to

disclose all the variations of their names and business identities is circumstantial evidence the Bankruptcy Court could rely on in determining intent under Section 727(a)(4).

### 2. *Tax returns*

The Bankruptcy Court found that Jayme and Rojas "did not disclose any tax refunds, even though their 2014 federal income tax return, filed just six weeks after their bankruptcy schedules, requested a $7,858 refund." *In re Jayme*, 2018 Bankr. LEXIS 1987, at *13. Jayme and Rojas admit this point. Because they owed back taxes subject to levy or seizure, Jayme and Rojas maintain the refund was not property of the bankruptcy estate subject to disclosure. This argument is disingenuous.

Jayme and Rojas conflate their duty to truthfully disclose with the precise type of property interest they possessed in the refund and whether the trustee could compel them to turnover proceeds. Schedule B of their Chapter 7 petition specifically asked Jayme and Rojas to identify "[o]ther contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims" and to provide the "estimated value of each." (Doc. 12, at 19). Jayme and Rojas answered "none" to this question. (*Id.*). The fact the IRS may have had an entitlement to withhold the refund would not alter the disclosure requirement; it simply means the refund is a "contingent" or "unliquidated" claim of "every nature." (*Id.*). Having been through the bankruptcy process on multiple occasions, Jayme and Rojas understood the plain language of the schedule.

Even assuming the duty to disclose is coextensive with the definition of "property," the tax refund constitutes property of the bankruptcy estate. *See Weinman v. Graves (In re Graves)*, 609 F.3d 1153, 1156 (10th Cir. 2010) (explaining that the bankruptcy estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case"). "[P]roperty does not have to be immediately capable of being liquidated . . . and includes

debtor's interests which cannot be liquidated and transferred by the debtor." *Id.* (citations omitted). Thus, "[e]very court that has considered this issue has held that the portion of an income tax refund that is based upon the pre-petition portion of a taxable year constitutes property of the bankruptcy estate." *In re Barowsky*, 946 F.2d 1516, 1518 (10th Cir. 1991). Although the estate's interest cannot exceed debtor's own property rights—the trustee here could not force the turnover of a refund never realized, *see id.*—this legal principal does not alter the analysis. Ultimately, while the refund may have been subject to seizure, the bankruptcy estate succeeded to any rights and defenses Jayme and Rojas may have had. Failing to disclose the refund deprived the trustee of assessing the benefit of pursuing the refund.

In focusing on property interests, Jayme and Rojas miss a larger point. Jayme testified at trial in 2018 that Jayme and Rojas owed the IRS $54,000 as of 2015; any tax refunds were seized and applied to the tax arrears; they made very little since filing for bankruptcy in 2015; and had "paid those liens off" as of the trial date. *In re Jayme*, 2018 Bankr. LEXIS 1987, at *16 As the Bankruptcy Court pointed out, "Jayme's testimony about the IRS claim and its post-petition payment could not be true unless his schedules and other statements are false." *Id.* at *26. In other words, even though failure to disclose the 2014 tax refund itself might be considered an innocent or immaterial, it was part of the circumstantial evidence that "[s]omething, either the amount of the debt, [Jayme and Rojas'] pre-petition tax refunds, or Jayme and Rojas' post-petition earnings, does not add up." *Id.* at *14.

### 3. *Undisclosed bankruptcy*

Rojas testified at trial that she did not disclose a 2011 bankruptcy case because an associated business, Ludgate Investments, LLC, filed the matter. *Id.* at *20-21. The Bankruptcy Court concluded her testimony was untruthful: (1) because the matter was filed under Chapter 13, which is reorganization for individuals; and (2) the petition was in her name. *See id.* The

full disclosure of past bankruptcies aids in determining whether debtors are entitled to a discharge at all and if so, what if any debts may previously have been discharged. *See* 11 U.S.C. § 727. Here, instead of demonstrating that there was no support for these findings, Jayme and Rojas continue with their claim that the bankruptcy was for Ludgate. This argument is disingenuous. The Court must defer to the Bankruptcy Court's findings because there is no basis to depart from them. Rojas was given an opportunity to testify about the past bankruptcy in 2011. She offered an explanation that the Bankruptcy Court determined lacked credibility. The Court must agree. While membership in the limited liability company may have been an asset (or liability) of Rojas, the case admittedly was filed under Chapter 13 focused on *her* financial reorganization.

### 4. *105 Thoroughbred Court*[7]

Jayme and Rojas lived at 105 Thoroughbred Court nearly rent free from 2006 to 2015, until their eviction *after* they filed this bankruptcy case. *In re Jayme*, 2018 Bankr. LEXIS 1987, at *27. They admit they failed to list this possessory interest in their SOFA despite the requirement "to list all property owned by another person that the debtor holds or controls." *Id.* Jayme and Rojas submit, however, that their possession was apparent to everyone. The Court agrees but fails to see how this contention squares with their obligations. "The Code requires nothing less than a full and complete disclosure of any and all apparent interests of any kind." *Sears v. Sears*, 542 B.R. 463, 478 (D. Neb. 2015). If Jayme and Rojas mean their omission was inadvertent, the Court could believe that representation. But the Bankruptcy Court was the trier of fact and free to view this oversight against all the other omissions and conclude, at the very

---

[7] Jayme and Rojas also argue that the Bankruptcy Court erred in finding that "it was not clear if Defendants ever made a mortgage payment" on 105 Thoroughbred Court and by not recognizing that Jayme owned the residence as sperate property and Rojas was an innocent spouse. The Bankruptcy Court's conclusion that Jayme and Rojas made false oaths precluding discharged did not turn on either of these findings. Thus, even assuming Jayme and Rojas are correct, they would have no effect on the outcome of the case.

least, it was part of an overall reckless indifference to the truth. *See In re Garland*, 417 B.R. at 815. The Bankruptcy Court, therefore, did not err in determining "Debtors should have disclosed their possessory interest in the Thoroughbred House" and "their failure to do so was either intentional, or else was done with reckless indifference to the truth." *In re Jayme*, 2018 Bankr. LEXIS 1987, at *27.

### 5. *False trial testimony*

The Bankruptcy Court identified eight categories of false testimony for Jayme: (1) removal of an air conditioning unit at 105 Thoroughbred Court; (2) payment of IRS debt; (3) scheduled debt owed to the Monge's former attorney; (4) Jayme's real-estate license; (5) real estate Jayme owned in Mexico; (6) aliases; (7) an alleged debt to an insurance company; and (8) ownership of a residential property. *Id.* at *15-20. As for Rojas, the Bankruptcy Court concluded her testimony about the 2011 bankruptcy was false. *Id.* The Court addresses only the property in Mexico and the alleged debt to the attorney. The name, IRS, and Rojas's bankruptcy issues are considered above, and Jayme and Rojas do not challenge the Bankruptcy Court's findings and to points (1) to (4).

#### a. Mexico property

The following exchange occurred at trial:

Ms. Monge: Do you own a property in Mexico?

Mr. Jayme: No, I do not.

Ms. Monge: You sold it?

Mr. Jayme: I don't own any property, but I do not know which property you speak of.

Ms. Monge: The one that you put in the bankruptcy court petition in 2003

[objection to relevance; overruled]

Mr. Jayme: I have not sold any property

Ms. Monge: So you still own . . .

Mr. Jayme: I don't own any property.

Ms. Monge: What about the project in Mexico where you were building like a hotel, it wasn't a hotel but it was a big project, that you invited me and my husband to participate?

Mr. Jayme: I do not own any property in Mexico.

Ms. Monge: Under a company?

Mr. Jayme: I do not own any interest in a company in Mexico.

Ms. Monge: So you didn't sell it, and you didn't own it, but you did have a property that is listed in your 2003 petition, worth half a million dollars.

Mr. Jayme: I may have, and I don't recall.

Mr. Jayme: You may have sold it?

Ms. Monge: I may have listed a property on my bankruptcy petition, but I don't exactly recall.

[court] Do you have a copy of the document [copy produced]

Mr. Jayme:   It may have been land owned by my family or my wife, but I don't have any property currently.

Ms. Monge: What happened to it?

Mr. Jayme: I can tell you honestly that I did not sell this land. I am assuming that title was transferred to someone else.

*Id.* at *18-19.

Jayme and Rojas insist this testimony was not false—[b]y reason of analysis, the logical conclusion is that [Jayme] did not recall the contents of his 2003 bankruptcy petition."  The Court rejects any alleged lack of recollection.  Jayme story changes.  At first, Jayme cannot recall the contents of his 2003 petition, but when he sees the document, he claims he cannot remember who owned the property and speculates the title was transferred.  Considering Jayme

concededly listed the property in the 2005 bankruptcy case, albeit for $450,000 less than in 2003, but at the time he filed this case in 2015, had the clear memory he owned no such property only later to admit in 2018 the property was transferred, the Bankruptcy Court was free to reject Jayme's alleged inadvertence.   In other words, by reason of analysis, there is no logical conclusion that the Jayme's testimony was the product of his "failure to recall the contents of his 2003 bankruptcy petition."

### b.   Debt to the Monges' attorney

At various points in their brief, Jayme and Rojas point out that they filed a motion to amend their petition in the Bankruptcy Court.  The motion, filed on September 26, 2016, only asks for relief with respect to removing the Monges' attorney as a creditor.  (Doc. 22, at 360-63). It does not appear that the Bankruptcy Court ruled on this motion.  The Court concludes, however, that Jayme and Rojas waived any argument that their motion to amend insulates them from the Bankruptcy Court's findings.

In the years between the motion and trial, Jayme and Rojas did not once ask the Bankruptcy Court for a ruling or point out any omission.  In fact, it was not until their amended motion for a new trial on August 1, 2018 that they raised a lack of ruling on a motion to amend. Jayme and Rojas filed the motion for a new trial after the Bankruptcy Court lost jurisdiction over the case because of the instant appeal.[8]  Under the circumstances, by failing to ask the Bankruptcy Court for a ruling until after it could no longer give one,  Jayme and Rojas waived any argument as to amended the complaint.  In any event, considering the many misrepresentations in this case and the Bankruptcy Court's reliance on no single omission as the basis for its conclusion, reversal is not warranted.

---

[8] The jurisdictional analysis is set forth below.

### 6. *Omissions and misrepresentations*

Jayme and Rojas argue the Bankruptcy Court, as a matter of law, could not find fraud generally and based on comparing past bankruptcy filings based on the doctrine of collateral estoppel and the statute of limitations. More generally, they claim there is no proof of an intent to defraud. These contentions lack merit.

### a. Collateral estoppel

In the context of the Texas bankruptcy proceedings, the Fifth Circuit concluded the Monges failed to prove that Jayme and Rojas committed fraud when Jayme and Rojas did not disclose the 105 Thoroughbred Court foreclosure proceedings. *In re Monge*, 826 F.3d at 257. By way of a motion to dismiss, Jayme and Rojas argued to the Bankruptcy Court that the doctrines of *res judicata* and collateral estoppel precluded the Monges from litigating the issue of fraud in this adversary proceeding. (Doc. 6, at 92-106). The Bankruptcy Court agreed in part and dismissed the Monges' causes under 11 U.S.C. § 524(a)(2)(A) and (a)(4) for fraud and breach of fiduciary duty in connection with the 105 Thoroughbred Court property. *In re Jayme*, 2017 Bankr. LEXIS 1614, at *10. On appeal, Jayme and Rojas assert the Fifth Circuit's decision is conclusive of the intent element of all of the Monges' claims. They are mistaken.

Collateral estoppel "prevents a party that has lost the battle over an issue in one lawsuit from relitigating the same issue in another lawsuit." *In re Corey*, 583 F.3d 1249, 1251 (10th Cir. 2009). While the parties litigated in the Texas courts whether Jayme and Rojas defrauded the Monges by concealing the 105 Thoroughbred Court foreclosure in 2006, they did not—nor could they—litigate whether Jayme and Rojas made fraudulent "oaths" in their 2015 bankruptcy schedules filed in the District of New Mexico New Mexico, *see* 11 U.S.C. § 727(a)(4), and concealed assets as part of that bankruptcy. *See* 11 U.S.C. § 727(a)(2)(A). Thus, separate and distinct *issues* of fraud comprised the parties' cases here and in the Western District of Texas.

The doctrine of collateral estoppel therefore has no application to the claims tried before the Bankruptcy Court.

b. <u>Statute of limitations</u>

In determining that Jayme and Rojas made false oaths, the Bankruptcy Court examined filings from five other bankruptcy cases Jayme and/or Rojas filed between 2003 and 2011 and compared them to the information disclosed in this case. *In re Jayme*, 2018 Bankr. LEXIS 1987, at *11-15. A spreadsheet the Bankruptcy Court developed highlighted discrepancies across petitions, schedules, and statements of financial affairs. *Id.*, at Ex. A. Jayme and Rojas maintain the statute of limitations precluded the Bankruptcy Court from considering past filings. The Court disagrees.

By definition, a statute of limitations "prescribe[s] the periods within which actions may be brought upon certain claims or within which certain rights may be enforced." *NCUA Bd. v. Nomura Home Equity Loan, Inc.*, 764 F.3d 1199, 1228 (10th Cir. 2014). It has nothing to do with evidence a court may consider. While the Bankruptcy Code may prohibit a debtor from obtaining a discharge in a subsequent case under Chapter 7 until eight years have elapsed from the discharge in the previous case, *see* 11 U.S.C. § 727(a)(8), this prohibition is not a statute of limitations and does not otherwise act as an affirmative bar to prevent a court from examining past bankruptcy filings and measuring the veracity of present statements by looking to past inconsistencies. Unsurprisingly, Jayme and Rojas do not cite to a specific statute, and the Court could find none that would govern here.

To the extent Jayme and Rojas challenge the relevancy of the past bankruptcy filings, the Court finds no fault in Bankruptcy Court's decision to examine them. "Evidence with respect to a debtor's past history of bankruptcy filings and dismissals is relevant to the determination of whether the present case was filed in good faith." *In re Huerta*, 137 B.R. 356, 374 (Bankr. C.D.

Cal. 1992).  Here, the Bankruptcy Court did not look to Jayme and Rojas's previous cases to penalize them for issues unrelated to this case, which is fully evident from its decision to apply the doctrine of collateral estoppel.  Instead, the Bankruptcy Court considered past information as a litmus test: for example, Jayme and Rojas' use of different names and disclosure of assets over time to determine present accuracy and the absence of any claimed mistakes.  "When the schedules and statements contain omissions and inconsistencies, they can evidence a pattern of deceit that supports fraudulent intent."  *Lowry v. Croft (In re Croft)*, 500 B.R. 823, 859 (Bankr. W.D. Tex. 2013).  Thus, the Bankruptcy Court properly considered Jayme and Rojas' previous cases to determine whether they were entitled to a discharge here.

### c.  Fraudulent intent

Jayme and Rojas "freely admit to some errors" in their bankruptcy papers.  Aside from claiming the discrepancies are mere mistakes and inadvertences, they blame their former attorney, point out they sought to amend their bankruptcy filings years before trial, as say they asked the Bankruptcy Court for a new trial to rectify their filings.  They also maintain the Bankruptcy Court "never explains what proof or evidence was given or admitted that proves Appellants deliberately made false oaths in their bankruptcy petitions, schedules, and SOFA, and with alleged fraudulent intent." The Court rejects these contentions.

From what the Court can discern, Jayme and Rojas lodged no complaint against their attorney, who withdrew in 2015, until *after* the final judgement in 2018.  Moreover, Jayme and Rojas themselves signed under penalty of perjury the the petition and attached filings were true and correct. (Doc. 12, at 65-66).  To the extent Jayme and Rojas allege ineffective assistance of counsel, they conflate the criminal and civil contexts   "The Supreme Court has repeatedly held civil litigants accountable for the acts and omissions of their chosen counsel, and has declined to visit the sins of a plaintiff's lawyer upon the defendant." *Nelson v. Boeing Co.*, 446 F.3d 1118,

1121 (10th Cir. 2006) (citations, quotations, and internal alterations omitted). As with most civil cases, a malpractice suit is the appropriate remedy.

Nor does the filing of a motion to amend excuse the many errors in their petition and papers. It is true the Bankruptcy Court did not rule on their motion. But the motion sought leave to amend for reasons unrelated to all but one of the false oaths (discussed above) the Bankruptcy Court identified. Thus, even had the Bankruptcy Court granted the motion, Jayme and Rojas could not have corrected their petition as they claim they would have and with hindsight only an adverse determination on the merits brings. Their pending motion to amend is no reason for reversal here.

Faulting the Bankruptcy Court for not ruling the motion for a new trial likewise is disingenuous. The Bankruptcy Court lacked jurisdiction to do so. Final judgement was entered on June 29, 2018; Jayme and Rojas filed a notice of appeal on July 12, 2018, and then moved for a new trial on July 25, 2018, which they amended on August 1, 2018. Under this timeline, the Bankruptcy Court could no longer consider the motion. Generally, the filing of a notice of appeal deprives a lower court of jurisdiction over the case. A motion for new trial filed within the time to appeal, fourteen days, operates to keep jurisdiction with the Bankruptcy Court until the motion is ruled on. *See* Fed. R. Bankr. P. 8002; 9023; *Armstrong v. Potter (In re Potter)*, 2002 Bankr. LEXIS 273, at *8 (B.A.P. 10th Cir. Mar. 27, 2002). Similarly, when a notice of appeal is filed before a motion for a new trial, and the motion is timely filed, the notice of appeal does not become effective, and jurisdiction does vest in the appellate court until the lower court rules. *See id.* Here, however, Jayme and Rojas' motion for a new trial was filed close to a month after the final judgment, and the Bankruptcy Court lacked the power to consider it.

Jayme and Rojas are incorrect that the Bankruptcy Court never explained what proof it relied on. The Bankruptcy Court highlighted multiple aliases Jayme and Rojas used across

petitions in five case, showing Jayme and Rojas failed to disclose the name they go by in this matter; failures to disclose property; omission of a past bankruptcy; misrepresentations of cash on hand, value of household goods, books, pictures, art objects, and cd collection, clothes, jewelry; errors in reporting business values, holdings, and identities and affiliations; failure to disclose tax refunds, accurately describe taxes owed as well income that would allow Jayme and Rojas to pay off $54,000 in tax arrears in three years from overpayments to the IRS; discrepancies in the amount Jayme said he owed in student loans and income identified on the bankruptcy schedules for 2014 as compared to the tax return of that year as well as monthly income and rent payments; and mischaracterization of consumer debt. *In re Jayme*, 2018 Bankr. LEXIS 1987, at *10-21.

Contrary to Jayme and Rojas' contention, the Bankruptcy Court fully explained its decision. It examined all the discrepancies, which Jayme and Rojas largely do not dispute, and concluded that the totality of the circumstances overcame any claim of mistake or inadvertence and supported the requisite intent. *Id.* Jayme and Rojas' *post hoc* ability to rationalize any one omission or ascribe innocence to their motive is not dispositive. The Bankruptcy Court was permitted to and did draw on the numerous occurrences as circumstantial evidence of intent under Section 727(a)(4). *See Garland*, 417 B.R. at 81 ("[O]rdinarily, the debtor will be the only person able to testify directly concerning his intent and he is unlikely to state that his intent was fraudulent. Therefore, fraudulent intent may be deduced from the facts and circumstances of a case."). Moreover, "reckless indifference to the truth" is "the functional equivalent of fraud[.]." The repeated instances of alleged innocent mistakes provided a factual basis upon which the Bankruptcy Court could and did infer fraud.

The Court may not and will not second guess the Bankruptcy Court's factual findings. The Bankruptcy Court heard the testimony firsthand and judged the credibility of Jayme and

Rojas in finding the facts.  Although the Bankruptcy Court could have believed Jayme and Rojas' testimony, it was under no obligation to do so.  In sum, Jayme and Rojas have offered no legal or factual basis to disturb the Bankruptcy Court's factual findings.

### 7. *Concealment*

The Bankruptcy Court concluded "at least one asset was fraudulently concealed" and precluded discharge under Section 727(a)(2)(A).  *In re Jayme*, 2018 Bankr. LEXIS 1987, at *29-30.  Jayme and Rojas complain the Bankruptcy Court did not identify what asset was concealed.  The Court disagrees.  The statement above, the one on which Jayme and Rojas rely, comes from the Bankruptcy Court's conclusion.  Above the conclusion, in the last part of its conclusions of law, the Bankruptcy Court explains "Defendants failed to schedule their income tax refund(s), which apparently were enough to satisfy their $54,000 IRS tax liability. The refunds were a material asset."  Jayme and Rojas are incorrect.  The Bankruptcy Court identified the asset that they concealed.

## IV.    CONCLUSION

For the reasons stated above, the final judgment of the Bankruptcy Court denying Jayme and Rojas a discharge under Section 727(a)(4) and (a)(2)(A) was legally sound and factually supported.  Jayme and Rojas' arguments to the contrary lack merit.

**IT IS, THEREFORE, RECOMMENDED** that the judgment of the Bankruptcy Court be **AFFIRMED** and this appeal **DISMISSED with prejudice.**

_____
KEVIN R. SWEAZEA
UNITED STATES MAGISTRATE JUDGE

WITHIN FOURTEEN (14) DAYS AFTER A PARTY IS SERVED WITH A COPY OF THESE PROPOSED FINDINGS AND RECOMMENDED DISPOSITION, THAT PARTY MAY, PURSUANT TO 28 U.S.C. § 636(B)(1), FILE WRITTEN OBJECTIONS TO SUCH PROPOSED FINDINGS AND RECOMMENDED DISPOSITION. A PARTY MUST FILE ANY OBJECTIONS WITH THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW MEXICO WITHIN THE FOURTEEN (14) DAY PERIOD ALLOWED IF THAT PARTY WANTS TO HAVE APPELLATE REVIEW OF THE PROPOSED FINDINGS AND RECOMMENDED DISPOSITION. IF NO OBJECTIONS ARE FILED, NO APPELLATE REVIEW WILL BE ALLOWED. PURSUANT TO FED. R. CIV. P. 72(B)(2), A PARTY MAY RESPOND TO ANOTHER PARTY'S OBJECTIONS WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE OBJECTIONS.