IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

IN RE FRANCISCO JAVIER JAYME,
and ALICIA ROJAS JAYME,

        Debtors,

FRANCISCO JAVIER JAYME,
and ALICIA ROJAS JAYME,

        Appellants,

v.

No. 1:18-cv-00675-JCH-KRS

JOE JESSE MONGE, and
ROSANA ELENA MONGE,

        Appellees.

## ORDER ADOPTING PROPOSED FINDINGS AND RECOMMENDED DISPOSITION, OVERRULING OBJECTIONS, AFFIRMING BANKRUPTCY COURT'S JUDGMENT, AND DISMISSING APPEAL WITH PREJUDICE

**THIS MATTER** comes before the Court on Appellants Francisco Jayme and Alicia Rojas' objections (Doc. 36) to Magistrate Judge Kevin R. Sweazea's proposed findings and recommended disposition ("PFRD"), filed on February 20, 2020. (Doc. 35). In the PFRD, the magistrate judge recommended that the Court affirm the Bankruptcy Court's final judgment denying Jayme and Rojas a discharge pursuant to 11 U.S.C. §727(a)(2)(A) and (4)(A). Having conducted a *de novo* review of those portions of the PFRD to which Jayme and Rojas objected, the Court adopts the PFRD, overrules the objections thereto, affirms the Bankruptcy Court, and dismisses this appeal with prejudice.

**I.    BACKGROUND**

In 2014, Appellees Joe and Rosana Monge obtained a large money judgment against Jayme and Rojas as a result of an adversary proceeding in the United States Bankruptcy Court for the Western District of Texas. The judgment consisted of rent Jayme and Rojas owed the

1

Monges under a 2006 sale/lease-back agreement of residential property located 105 Thoroughbred Court in Santa Teresa, New Mexico. The Fifth Circuit affirmed the judgment in *Monge v. Rojas (In re Monge)*, 826 F.3d 250 (5th Cir. 2016). How exactly the parties ended up in the present posture is the subject of multiple court proceedings dating back to 2003. The Court does not recount that lengthy history here. The United States Bankruptcy Courts for the District of New Mexico and Western District of Texas, the Fifth Circuit Court of Appeals, and, to some extent, the magistrate judge have all summarized those events.

As is germane to this appeal, Jayme and Rojas ultimately filed the instant case seeking protection under Chapter 7 of the Bankruptcy Code. They listed the Monges as creditors, and the Monges filed this underlying adversary proceeding to prevent Jayme and Rojas from discharging the judgment the Monges won in the Western District of Texas. Following a trial on the Monges' complaint, the Bankruptcy Court denied Jayme and Rojas a discharge because they "made false oaths in their bankruptcy petition, schedules, and [Statement of Financial Affairs]'SOFA' and gave false trial testimony, all about material facts, and with fraudulent intent." *Monge v. Jayme (In re Jayme)*, 2018 Bankr. LEXIS 1987, at *2 (Bankr. D.N.M. June 29, 2018). Jayme and Rojas appealed the final judgment to this Court. They filed an opening brief, but the Monges did not participate in the appeal. After the briefing period elapsed and pursuant to an order of reference from the Court, the magistrate judge issued the PFRD recommending the Bankruptcy Court be affirmed. Jayme and Rojas' timely objections followed.

## II. STANDARD OF REVIEW

When a party objects to a PFRD, the Court "shall make a de novo determination of those portions . . . to which objection is made." 28 U.S.C. § 636(b)(1)(C). The party must make specific objections; general or conclusory objections do not preserve review. *See United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1060-61 (10th Cir. 1996). "[T]he filing of objections . . . enables

2

the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute," and only objections that clearly "focus the district court's attention" on the central disputes will be considered. *Id.* at 1059-1060. Further, "[i]ssues raised for the first time in objections to the magistrate judge's recommendation are also deemed waived." *Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996).

## III.  ANALYSIS

Liberally construed, Jayme and Rojas' objections challenge the magistrate judge's (1) treatment of the case history leading up to the Monges' judgment in the Western District of Texas; (2) analysis as to the Monges' standing to bring the adversary proceeding; (3) determination that Bankruptcy Court was not impartial; and (4) conclusion that the Bankruptcy Court properly found that the misrepresentations in Jayme and Rojas's sworn bankruptcy filings as well as their trial testimony were made with the requisite fraudulent intent and precluded discharge under Section 727(a)(2)(A) and (4)(A).

### A.  Case History

In their objections, Jayme and Rojas count seven "false allegations" from the Bankruptcy Court's findings of fact and conclusions of law that they claim the Bankruptcy Court improperly considered in denying discharge.[1] Presumably, the magistrate judge should have but failed to

---

[1] Jayme and Rojas' allegations concerning the Bankruptcy Court's findings of fact include:
  1. "Plaintiffs obtained a $775,000 mortgage to finance the house so that defendants could invest $300,000 equity in the subdivision project. A false allegation."
  2. "Plaintiffs learned that Defendants had not actually owned the house at the time of the alleged sale/leaseback. A false allegation (Court ruled Jayme had redemption right and executed warranty covenants)."
  3. "Defendants then secretly executed a deed purporting to convey the house to Plaintiffs on June 28, 2006, almost seven months after executing the original fraudulent deed. A false allegation (Deed was legitimate, Texas Court ruled ii to be legal and valid)."
  4. "Defendants misrepresented their ownership status orally and through a <u>fraudulent title commitment</u>. A false allegation (Texas court ruled no fraud, title was insured and guaranteed with warranty covenants)."
  5. "Plaintiffs allege Defendants committed other instances of <u>fraud and/or embezzlement</u> in connection with the sale. A false allegation (No evidence or proof of alleged fraud or embezzlement)."

3

recognize the false allegations as such. (Doc. 36, at 3-4). Jayme and Rojas separately point to ten "evidentiary facts" disputing the Magistrate Judge's analysis.[2] (*Id.* at 8-9). The Court need not belabor these contentions. Even assuming Jayme and Rojas challenged the "allegations" or raised the "evidentiary facts" in their opening brief, *see Marshall*, 75 F.3d at 1426 (issues raised for the first time in objections are waived), Jayme and Rojas fail to explain the significance of them. The Bankruptcy Court's disposition rested on misrepresentations at trial and in sworn bankruptcy filings in this Chapter 7 case. *In re Jayme*, 2018 Bankr. LEXIS 1987, at *24. Thus,

---

6. "Defendants obtained a $78,000 loan from a third party without Plaintiffs knowledge or consent to prequalify Plaintiffs for the mortgage on the house. A false allegation."
7. "In March 2007 Defendants misused Plaintiffs personal information in an attempt to refinance the house and abscond with the loan proceeds. A false allegation."
8. "Plaintiffs also point to various instances of fraud and wrongdoing in connection with the parties' joint ventures. A false allegation (No evidence or proof given, a fictitious claim)."
9. "Defendants falsified corporate resolutions… A false allegation."

(Doc. 36, at 3-4).

[2]There are actually eleven, but one merits separate discussion as discussed below. The remaining ten evidentiary facts include:

1. "Only Francisco Javier Jayme, individually borrowed and purchased the 105 Thoroughbred property as his '*Sole and Separate property*' in **2002**."
2. "Only Francisco Javier Jayme, individually defaulted on his secured debt obligation and petitioned for a Chapter 13 Repayment plan, on **Three** occasions between **2003 & 2005**."
3. "Alicia Rojas de Jayme as an individual Appellant was **never** on title, she did not **borrow** any money, and did not **purchase or sell** the Thoroughbred property."
4. "Before, during and after the sale of the Thoroughbred property the Seller, Francisco Javier Jayme was never legally obligated or contractually required to inform the Monges, or the Monges' lender that he was in foreclosure or bankruptcy, although this information was at all time a public record and more particularly, that Alicia Rojas de Jayme was Not in foreclosure or bankruptcy."
5. "**Francisco Javier Jayme** individually **contributed** and **paid** exactly **$84,911.70** of **his funds** in Equity to the Monges at closing on the sale date of his home at 105 Thoroughbred."
6. "Jayme and Rojas paid or contributed from their personal funds over **$190,000** directly to the Monges soon after the sale and title transfer of the 105 Thoroughbred property."
7. "Appellant, Francisco Javier Jayme **never** signed, executed or agreed to the Monges' sale/lease-back agreement, hence **how did he default** on fictitious lease agreement?"
8. "Appellant, Alicia Rojas de Jayme individually executed the Monges' sale/lease-back agreement, *otherwise she stood being evicted by the Monges ' and their attorney*."
9. "Following a sham trial in 2014, the Monges *fraudulently* won a money judgment for unpaid rents due during the trial against Jayme and Rojas for **$997,354**. On **June 14, 2016** the Fifth Circuit Court affirmed the judgment. See *In re Monge*, 826 F.3d 250 (Fifth Cir. 2016)."
10. "While the **judgment** against Jayme and Rojas was on appeal in the Fifth Circuit, Bankruptcy Judge David Thuma unjustly and unlawfully ordered and issued a writ of Possession and Execution for turnover and possession of the Thoroughbred property illegally executed by the United States Marshalls Service on **June 23, 2015**. See Judge James O. Browning Opinion, *Monge v. Royas,* 150 F. Supp. 3d 1244 (D.N.M. 2015)."

(Doc. 36, at 8-9).

the decision to deny discharge did not ultimately concern the subject matter of the "fraudulent allegations"—the sale of, ownership of, the nature of the deed to, the procurement of the mortgage for, attempts to refinance regarding, and allegations of fraud surrounding the 105 Thoroughbred Court property or the parties' joint ventures together. Nor do the "evidentiary facts" regarding these same topics dispute anything material.

What Jayme and Rojas imply is that the judgment the Monges obtained against them in the Western District of Texas was by fraud[3] and therefore cannot serve as the basis for this adversary proceeding. But the Monges' judgment was appealed to the Fifth Circuit and affirmed. The Court may not collaterally review the Fifth Circuit's decision. *See FDIC v. Bank of N.Y.*, 479 F. Supp. 2d 1, 19 (D.D.C. 2007) (explaining litigants "should not be permitted to make an end run around [one federal court's] judgment and the appellate process by collaterally attacking th[e] . . . judgment in another forum). Thus, as the magistrate judge observed, Jayme and Rojas's remedy was not a collateral attack in this case on the underlying judgment, but an appeal or cross appeal in the Fifth Circuit to reverse the Western District of Texas's judgment.

### B. Standing

Jayme and Rojas contend, as they did in their opening brief, that the Monges' judgment belonged to the Monges' mortgage holder and only the mortgage holder or the bankruptcy trustee in Texas could litigate the instant adversary proceeding. The magistrate judge's analysis on this point does not bear repeating. Regardless of nomenclature—whether framed as issue

---

[3] Jayme and Rojas argued "the Monges have been conducting a criminal enterprise which continues to this day[.]" They cite seven "evidentiary facts" in this regard claiming the Monges conspired with their attorney to commit mortgage fraud; they planned to convert $300,000 in equity of the 105 Thoroughbred Court property; the Monges demanded this amount in exchange for a fraudulent loan; the Monges knew Jayme and Rojas were in a foreclosure proceeding when they executed the sale/lease-back agreement; the Monges fraudulently obtained the equity in and the 105 Thoroughbred Court property itself; the Monges fraudulently failed to tell the Bankruptcy Court in Texas that they owed over $600,000 on the 105 Thoroughbred Court property to America's Wholesale Lender; the Monges gained title to the 105 Thoroughbred Court Property and profited from the equity, but never paid their mortgage debt for twelve years.

5

under Article III of the Constitution or who the real party in interest is—the Western District of Texas, as upheld by Fifth Circuit, awarded the Monges the judgement that Jayme and Rojas sought to discharge in their Chapter 7 case. Jayme and Rojas themselves designated the Monges as creditors in their sworn bankruptcy filings; and because the Monges held a valid judgment,[4] they were, in fact, creditors under the law authorized to bring an adversary complaint. *See* 11 U.S.C. §§ 101(5)(A); 101(10)(A); 727(c) (defining creditor as "having a claim [right to payment, whether or not reduced to judgment] against the debtor that arose at the time of or before the [filing of the bankruptcy petition]" and allowing creditors to object to discharge). Contrary to Jayme and Rojas' objections, the Monges had standing to bring, and were the real parties in interest in, this adversary case.

### C. **Partiality**

Jayme and Rojas object to the magistrate judge's conclusion that they failed to preserve all but one of their challenges to the Bankruptcy Judge's partiality. Rather than point to the record where they did so, Jayme assert broadly that the case history documents their claims of bias. The Court declines to review the entire record on appeal in a futile effort to verify this contention; it was incumbent on Jayme and Rojas to make specific objections. *See United States v. 2121 E. 30th St.*, 73 F.3d at 1060 (requiring objections to be "sufficiently specific to focus the district court's attention on the factual and legal issues that are truly in dispute"). Contrary to their argument, *Fort Bend Cty. v. Davis*, 139 S. Ct. 1843, 1850 (2019) does not excuse Jayme and Rojas' obligation to preserve their claims of bias. In *Fort Bend*, the Supreme Court held that failure to exhaust administrative remedies under Title VII of the Civil Rights Act is not jurisdictional. Here, the magistrate judge did not make a jurisdictional determination or even

---

[4] While Jayme and Rojas do not believe the Monges' judgment is valid, they did not challenge and overturn the Monges' judgment in the Fifth Circuit, and, therefore, cannot change who holds the judgement by collateral attack in this Court.

6

consider exhaustion of remedies, but instead concluded Jayme and Rojas' relinquished their right to appellate review through inaction.

To the extent Jayme and Rojas assert they raised bias in a motion for new trial before the Bankruptcy Court, this Court may not review the motion because the Bankruptcy Court has not ruled on it.  In fact, the motion is not part of the record on appeal; the motion was filed *after* the notice of appeal.  Had Jayme and Rojas submitted their motion within fourteen days of the judgment, the Bankruptcy Court could have disposed of it.  The notice of appeal would have become effective once the Bankruptcy Court ruled and allowed this Court to examine the motion for new trial on appeal.  *See* Fed. R. Bankr. P. 8002; 9023; *Armstrong v. Potter (In re Potter)*, 2002 Bankr. LEXIS 273, at *8 (B.A.P. 10th Cir. Mar. 27, 2002).  Because Jayme and Rojas filed the motion after the fourteen-day deadline, however, the Bankruptcy Court could not consider the motion while this appeal is pending.  This apparent conundrum will resolve upon this Court's final judgment.  The Bankruptcy Court will regain jurisdiction and may rule on the motion for a new trial, if appropriate.

### D.  The Bankruptcy Court's Findings and Conclusions

The magistrate judge recommended affirming the Bankruptcy Court's determination that the numerous misrepresentations in Jayme and Rojas' sworn bankruptcy filings and their trial testimony amounted to false oaths made with fraudulent intent as well as the concealment of at least one asset.  *See* 11 U.S.C. § 727(a)(2)(A) & (4)(A).  The magistrate judge observed that, for the most part, Jayme and Rojas did not dispute the contents of their sworn statements or their misrepresentations.  Even accepting that Jayme and Rojas could offer an innocent explanation for any one misstatement, the magistrate judge concluded the Bankruptcy Court, as trier of fact, was permitted to and did consider (a) the totality of misrepresentations as circumstantial evidence of fraudulent intent and/or (b) as a pattern showing reckless indifference to the truth.

Jayme and Rojas object claiming (1) their mistakes were innocent; (2) their former attorney was responsible for ensuring the accuracy of their bankruptcy filings including all names aliases used; (3) a request for a tax refund was omitted from their sworn bankruptcy schedules and their income figures did not add up because of issues with the IRS; (4) Alicia Rojas' undisclosed bankruptcy case was for a business entity and improperly filed in Texas as a Chapter 13; (5) they paid all back rents on the 105 Thoroughbred Court property until 2009; (6) their trial testimony was not false; and (7) they did not conceal their tax.

Jayme and Rojas raised these arguments in their opening brief, and they fail for the reasons the Magistrate Judge gave. The Court adopts those reasons here without repeating the analysis. Ultimately, as the Magistrate Judge recognized, the Bankruptcy Court was permitted to weigh Jayme and Rojas' claims of innocence and blame against over a dozen instances of omissions and inconsistencies in their sworn statements. Jayme and Rojas do not dispute these issues exist. As such, these misrepresentations circumstantially formed the basis from which the Bankruptcy Court properly could discern intent or reckless indifference to the truth. *See United States Tr. v. Garland (In re Garland)*, 417 B.R. 805, 810 (10th Cir. BAP 2009) (explaining intent to defraud may, and often must be "deduced from the facts and circumstances of a case" and "ordinarily, the debtor will be the only person able to testify directly concerning his intent and he is unlikely to state that his intent was fraudulent"); *In re Butler*, 377 B.R. 895, 922 (Bankr. D. Utah 2006) ("[R]eckless indifference to the truth" is "the functional equivalent of fraud[.]") (Citations omitted).

The Court recognizes, as did the magistrate judge, that Jayme and Rojas filed a motion to amend their Chapter 7 petition that the Bankruptcy Court did not rule on. But the only ground on which Jayme sought relief was to remove the Monges' attorney as a scheduled creditor. Thus, had the Bankruptcy Court granted the motion, it would not have addressed the score of

8

other errors, omissions, misrepresentations, and/or inconsistencies in Jayme and Rojas' sworn bankruptcy filings. To the extent Jayme and Rojas claim they seek to amend their schedules in their motion for a new trial, the motion is not properly before the Court.

## IV. CONCLUSION

After a *de novo* review of the magistrate judge's PFRD in light of the objections lodged, the Court concludes there is no basis to modify or reject the magistrate judge's recommendation.

**IT IS THEREFORE ORDERED** that:

1. The magistrate judge's PFRD (Doc. 35) is **ADOPTED** as an order of the Court and Jayme and Rojas' objections (Doc. 36) are **OVERRULED**.

2. The judgment of the Bankruptcy Court is **AFFIRMED**.

3. This appeal is **DISMISSED with prejudice**.

_____
UNITED STATES DISTRICT JUDGE